## GRANT & STONE v. WOOD.

1. The shipper being owner of goods sent by a general ship, is liable for the freight at all events, independent of the bill of lading; and it is immaterial whether the ownership appears on bill of lading or not.

2. If goods shipped by a general ship by bill of lading to be delivered to a specified consignee, "he paying the freight," are delivered by the captain to the consignee without freight being paid, the owner who shipped the goods is not thereby discharged from his liability to pay freight.

3. If goods consigned to be delivered on the payment of freight by the consignee, are delivered without payment, and the captain takes in payment of freight a bill on the owner for balance of freight drawn by consignee which is refused payment, the owner is not thereby discharged from his original liability.

Rule to shew cause. This was an action of assumpsit for freight upon certain goods shipped by Joseph Wood, the defendant, on board the vessel of the plaintiffs (the ship *Julia*) to be carried from Philadelphia to Montevideo. There were four counts. 1st, on a bill of lading as a special contract; 2nd, indeb. assumpsit for freight and primage ; 3rd, for freight only ; and lastly, on an account stated.

The plaintiffs proved at the trial a bill of sale for the ship from John McRae to them, dated 1 Nov. 1836, purporting to be for the consideration of one dollar : Also the registry or enrolment in their names 10 Nov. 1836 : also a bill of lading dated 15 Nov. 1836, given by W. S. Taylor, as master, to Wood, which stated that certain lumber and merchandize were to be delivered at Montevideo to Zimmerman, Frazer & Co., and Alfred Cox, (the latter the supercargo of the ship) or to their assigns, he or they, paying freight for the said goods 3179,03 Spanish dollars, &c., with primage and average accustomed. They proved its assignment by Wood to one R. V. M. Cooper, and the ownership of the goods when shipped by Wood. The ship safely arrived at its port of destination, and the goods were delivered to Zimmerman, Frazer & Co., who were commission merchants in that place.

The plaintiffs further proved that on the sale by the consignees, for and on account of Wood, there were no net proceeds, the charges and freight exceeding the amount of sales. It was

testified that the net proceeds were not sufficient to pay freight, and that the sales fell short of freight, duties, incidental charges, &c., which were according to the known mercantile usage of the place, in the sum of $625.81, for which sum Zimmerman, Frazer & Co. drew on Wood, of Philadelphia, in favor of Grant & Stone, to whom this sum was due. The plaintiff read the depositions of Mr. Frazer, a partner, and of Mr. Lowry, a Clerk, in the house of Zimmerman, Frazer & Co., taken by commission.

The defendant read the deposition of Alfred Coxe, who testified that Dielh & Coxe were the owners of the ship *Julia*, at the time of the shipment; that they had purchased said ship of McRae; that the vessel was paid for by Grant & Stone, to whom therefore the bill of lading was made, and who were to receive the freight of the voyage, and to hold the vessel until re-imbursed: that there was an understanding that when Dielh & Coxe paid Grant & Stone, the latter were to transfer her to the former. He further testified that Dielh & Coxe on 31st Oct. 1836, advertised in their own names for freight for the voyage; that the bills of lading were signed by the master, but that Grant & Stone had received the freights, so far as any was paid.

The bill of exchange drawn on Wood in favor of Grant & Stone, having been dishonored, and the balance of freight to the amount specified, remaining unpaid, this action was brought for its recovery. At the trial at the Mercer Circuit, in December, 1844, before Mr. Justice *White*, a verdict was rendered for the plaintiffs for the sum of $835.31.

Argued before WHITEHEAD, CARPENTER and RANDOLPH, JJ. By Vroom, for defendant, and W. L. Dayton, for plaintiffs.

Mr. *Vroom* in support of the rule.

1. The owners must look to the consignees and not to the consignor, the former having received the goods under the bill of lading. If the master deliver without receiving the freight, he does so at his own risk; he must rely on the ability of the consignees, and cannot thereby throw the responsibility on the

Grant & Stone v. Wood.

consignor.. 12 *Mod.* 447 ; *Cock* v. *Taylor*, 13 *East.* 399 ; *Bell* v. *Kymer*, 5 *Taunt.* 477 ; *Shields* v. *Davis*, 6 *Ib.* 65 ; *Drew* v. *Bird*, 1 *Mood. & Malk.* 156 ; *Scaif* v. *Tobin*, 3 *B. & Adol.* 523 ; *Abbott, part* 3, c. 3, § 2. *Smith Mer. L.* 177 (*Law Lib. Ed.*) Consignee was not held liable when he seized goods under execution against consignor, instead of accepting them under bill of lading. *Lucas* v. *Nockells*, 10 *Bing.* 157. This shipment was made by Mr. Wood in general ship, there was no charter party, and the bill of lading expressed that consignees should pay freight. There are some cases that look the other way, as *Tapley* v. *Martens*, (8 *T. R.* 451), and *Shepard* v. *De Bernales*, 13 *East.* 565, but they are chiefly cases of action brought on charter party, and when there was an express covenant to pay the hire of the ship. This consideration was not adverted to in the case of *Barker* v. *Havens*, 17 *John.* 234, which will be cited on the other side. This case has disturbed the rule, and is controverted. The plaintiffs have received a bill of exchange from the consignees, and must look to them as consignees or as drawers of the bill. In *Domett* v. *Beckford*, (5 *B. & Adol.* 521,) it appeared on the face of the bill of lading that the goods were shipped *on the account and risk of the defendant*.

2. But Grant & Stone were not the owners of the ship : Dielh & Coxe were the beneficial owners who advertised for freight, and who freighted the ship.

*W. L. Dayton* contra.

The plaintiffs purchased the ship and paid the consideration money. Dielh & Coxe simply procured freights. A bill of lading is not a stipulation to pay any body, but there is an implied promise to pay the owner. The shipper assumes to pay the owner by legal intendment, and he is liable in all events, unless he act as mere agent, or when goods are consigned to a vendee. The shipper is liable independent of a bill of lading, on the general principle that the owner of the goods is liable for their freight. In *Drew* v. *Bird*, the shipper was not owner. In this case there is no controversy but that Wood was the owner of the goods shipped. *Smith's Mer. L.* 187 ; *Domett* v. *Beck-*

*ford,* 5 *B. & Adol.* 521 ; *Barker* v. *Havens,* 17 *John.* 234 ; *Tapley* v. *Martens,* 8 *T. R.* 451 ; *Christie* v. *Lewis,* 2 *Brod. & Bing.* 410. The bill of exchange was never paid ; the freight still remains due, and it is proved to belong to Grant & Stone. They were the owners not only of the voyage, but of the ship.

CARPENTER, J. This suit is brought not for the whole amount of the freight stipulated by Wood when the shipment was made by him, but for the balance which remained due according to the account rendered by Zimmerman & Co. The bill drawn by them on Wood at Philadelphia, having been dishonored, this balance remained due and unpaid.

It is said in support of the rule to set aside the verdict, that in case of shipment by general ship, the consignee by the bill of lading to pay freight, if the lien is waived and the goods delivered before payment, the shipper is not liable, but that the master or his employer must look to the consignee. It is true the consignee, or the endorser of a bill of lading, may be sued if he have received the goods in pursuance of a bill of lading, imposing the payment of freight upon him ; at all events, in cases where there is no charter party. The receipt of goods by a general ship, under such bill of lading, is evidence of a contract by the person so receiving them, to pay the freight. *Roberts* v. *Holt,* 2 *Show.* 443 ; *Cock* v. *Taylor,* 13 *East.* 399 ; *Abbott* 420, (5*th Am. Ed.*) But the liability of the consignee does not depend, in such case, upon the assumption that the original shipper would not be liable, as once seems to have been thought, but upon a new contract to pay the freight, evidenced in ordinary cases by the bill of lading and the reception of goods under it. There is no shifting of liability. The contract of the consignor and consignee is not considered to be inconsistent with each other ; each is an original contract upon a sufficient consideration. *Abbott* 424, *note by Story.* See *Van Zeller* v. *Sanders,* 4 *Q. B.* 260.

*Domett* v. *Beckford,* 5 *B. & Adol.* 521, and *Barker* v. *Havens,* 17 *John. R.* 234, are both direct authorities in support of the present action ; the consignors, owners of the goods, being held liable for the freight—the master in each case under the usual bill of lading, having delivered the goods without receiving the

freight. In the one case, the ownership of the goods by the defendant appeared upon the face of the bill of lading; in the other it seems to have been shewn aliunde, a distinction which we do not consider to be material. It was held that the clause in the bill of lading "that the goods were to be delivered to the consignees, *they paying the freight, &c.*," was merely for the benefit of the master or ship owner, and did not make it compulsory on the latter to withhold the delivery of the goods until payment of freight by the consignee, and consequently that the owner of the goods was not discharged from his primary liability, by the neglect of the ship owner to obtain payment of the freight from the consignee. In *Domett* v. *Beckford*, PARKE, J. said, " as soon as the goods (the property of the defendant) were shipped in the plaintiff's ship, to be carried, &c., the defendant even before bills of lading were signed, became liable to pay freight. From the fact that the goods were laden on a ship to be conveyed, the law will imply a contract by the owner of the goods to pay for the carriage." In *Barker* v. *Havens*, it was said by Kent, C. J. who delivered the opinion of the court, that " he should clearly be of opinion that if it appeared that the goods were not owned by the consignor, and were not shipped on his account and for his benefit, that in such case the carrier would not be entitled to call on the consignor for freight;" a distinction which reconciles *Drew* v. *Bird* with the two cases referred to. See *Smith's Mer. Law*, 188.

Here Wood was the owner of the goods shipped; they were shipped at his instance and for his benefit, and upon these principles he is clearly liable for the freight; the law will imply a contract on his part to pay for the carriage. He was liable originally, and there is nothing to change his liability.

It can scarcely be pretended that the bill of exchange drawn upon Wood, and dishonored, paid or in any way satisfied the balance of freight. According to *Tapley* v. *Martens*, when taken by the master of the consignee, the consignor is not discharged unless it was taken voluntarily, and for the mere convenience of the master. See *Abbott k* 19, *and cases cited.*

In regard to the ownership, and to the right of the plaintiffs to sue, I do not perceive any doubt to exist. They held the legal title of the vessel, the freights of the voyage were to be receiv-

ed by them, and the freight in question is testified expressly to belong to them by Mr. Frazer, and also by Mr. Coxe, whose deposition was read by the defendant. The rule must be discharged.

RANDOLPH, J.   Wood, the defendant, shipped a quantity of lumber and other merchandize from Philadelphia to Montevideo, in the ship Julia, whereof Taylor was master, and Grant & Stone, held a bill of sale as owners.   Dielh & Coxe, of Philadelphia, being the shipping agents, or quasi owners, under whose care and pursuant to whose advertisement of the vessel for freight or passage, the merchandize of the defendant was shipped, and the freight in question carried.   The bill of lading was made out in the usual form, in the name of the master, and consigned the defendant's goods to Zimmerman, Frazer and Co., of Montevideo, *they paying freight,* to whom they were safely delivered, and by whom they were sold for or on account of the owner. But owing to the state of the market at the time brought $625.-81 less than sufficient to pay freight, primage and other lawful charges, for which sum Z. F. & Co. drew on Wood the shipper, in favor of Grant & Stone, but the draft not being accepted, G. & S. as owners, bring their action of assumpsit against Wood for the freight, or rather for the deficiency thereof, after deducting the amount of sales.   The plaintiffs recovered below a verdict for the amount claimed, and the application at this time is to set the verdict aside and grant a new trial, on account of certain objections raised at the circuit, and decided against defendant.

1. In the first place it is insisted that if this action will lie at all against defendant, the plaintiffs are not so situated as to entitle them to sue as owners of the vessel.   It appears from the evidence, that Dielh & Coxe purchased the vessel of John McCrea ; advertised her in the newspaper for freight or passage for the voyage, and that Coxe, one of the firm, went as supercargo, in the vessel, who states in his deposition taken in the cause, that Dielh & Coxe were the owners and purchasers of the vessel, but that Grant & Stone paid for her of their own money, took a bill of sale and registered the vessel in their own names

as owners; all this was in pursuance of an understanding between them and D. & C., who also agreed that G. & S. should take the freight and hold the vessel until D. & C. paid for her, when she was to be transferred to them; the ship being lost soon after the voyage, never was paid for or transferred. There was also some evidence of the bill of lading having been transferred, after the sailing of the vessel, from Wood to one Cooper, but this of course could not exonerate the shipper from paying freight. The shipper of goods is liable in an action of assumpsit, brought by the owners for the freight. 3 *Kent Com.* 173; 1 *T. R.* 659; 8 *T. R.* 451; *Park. J.*, in *Domett* v. *Beckford*, 5 *B. & Adol.* 522. And although for some purposes possession of a vessel is sufficient evidence of ownership, or even the direction and control of her may answer in some cases, yet these facts amount only to *prima facie* evidence; sufficient as against a stranger, but not as against a person claiming to hold by virtue of bill of sale and payment. The legal title vested in Grant & Stone, of course the right of action must be in them. Dielh & Coxe having only an equitable title to the vessel, must look for their remedy to Grant & Stone, who had not only the legal title to the vessel, but by agreement of D. & C. were to take the freights, until the ship was paid for. So that D. & C. would be barred as well by principles of law as their own agreement from disputing the question of ownership in a matter of freight; and if they could not object, then of course the defendant cannot, he being a mere stranger to the agreement. 3 *Kent.* 94; 1 *Mason* 139; 16 *Mass.* 336. This is different from a question of liability as owner, that not always depending on the registry and bill of sale. *Wendover* v. *Hogeboom*, 7 *Jno. R.* 308; 7 *Cowen*, 697. Dielh & Coxe had not the legal title to the vessel, nor had they the claim under a charter party for the voyage, but their rights were pursuant to the understanding or parol agreement between them and the plaintiffs, and as the recovery of freight in this suit must bar any recovery hereafter by D. & C., this objection to the verdict must be disallowed.

2. In the next place it is insisted that inasmuch as the captain delivered the merchandize to Zimmerman, Frazer & Co., the consignees, who by the terms of the bill of lading, were to pay

the freight before or at the delivery, they and not the shippers are liable. This exception depends on the construction to be given to the phrase *he or they paying freight,* to be found in the present and in most bills of lading. In *Shepard* v. *De Bernales,* 13 *East.* 565, the effect of this clause in a bill of lading was fully considered by Ld. Ellenborough. That was an action of covenant on a charter-party, brought by the master against the charterer, who had covenanted to pay the freight on a "right and true delivery of the cargo." The master having covenanted to deliver the cargo to the defendant or his agent, agreeably to the bills of lading, which required a delivery to the defendant, his agent or assigns, he or they paying freight. The question of delivering the goods, according to the bill of lading, without receiving the freight of the consignee, was brought up by special plea and demurrer thereto, precisely the question we have now under consideration, and the court held that the clause was originally introduced into the bill of lading for the benefit of the master and owners, and not of the shipper, who could not take advantage of its non-performance, and so judgment was rendered for the plaintiff. The Chief Justice, in his opinion, refers to all the cases there decided on the subject. *Penion* v. *Wilks,* in which Lord Kenyon decided differently at *nisi prius,* but afterwards concurred with the rest of the court in reversing his own decision. Also to *Tapley* v. *Martens,* 8 *T. R.* 451; and *Christie* v. *Row,* 1 *Taunt.* 300; both cases fully sustaining the views of the Chief Justice. There is no doubt however that when the consignees or their assignees receive a cargo under the bill of lading, they may be prosecuted for the freight by the master or owners, according to the circumstances of the case. *Cock* v. *Taylor & al.,* 13 *East.* 398; *Bell* v. *Kymer,* 5 *Taunt.* 477, and many others, to which reference might be made under that class of cases, but these merely present questions of liability or otherwise of the consignee or his assignee, not of discharge of the shipper or consignor. The case of *Drew & al.* v. *Bird,* 1 *Moody & M.* 151, has been referred to and much relied on by the defendant in this case, as establishing a different rule in cases of assumpsit against the shipper, from that in debt or covenant against the charterer on the charter-party, *Shepard* v. *De Bernales,* and

the other cases referred to being of the latter description. The bill of lading in *Drew* v. *Bird*, was "shipped by A. Bird, (defendant) by ship M. for London, to be delivered to E. G., for the Imperial Distillery Company, or to their assigns, he or they paying freight for the same." Upon which, Lord Tenterden charging the jury, says: "The bill of lading directs them to deliver to Griffiths, they paying freight, they deliver without receiving it, they cannot thereby make Bird liable to them, *if he were not so originally, and on the face of the bill of lading nothing appears to charge him.*" This was a *nisi prius* case determined in 1828, seventeen years after the case in bank of *Shepard* v. *De Bernales,* and it can hardly be supposed that his lordship intended to establish a different rule, and to overturn the well considered opinion of Ld. Ellenborough, and the cases referred to by him, without even referring to them, although the case of *Penion* v. *Wilkes* was cited in the argument, especially as those cases were determined not upon any distinction that might exist in a suit upon a bill of lading for freight or upon a charter-party, but upon the construction given to the phrase, he or they paying freight, as tending to relieve the consignor or shipper from liability. By the case it is manifest that Bird was not the owner of the goods, but the mere consignor, or agent of the owner ; he shipped them *to* Griffith *for* the Imperial Distillery Company, at London— they of course were the owners, liable for freight, and according to the principles of common carriers, must have prosecuted in their names for any loss or damage to the cargo—the consignor being the mere agent of the consignee, or owner in whom the property exists. 1 *New & Man,* 421; 5 *Burr* 2680 ; *Moor* v. *Wilson,* 1 *T. R.* 659. This was clearly the understanding of Lord Tenterden, when he says there was nothing in the bill of lading to charge Bird, the defendant, and the mere delivery of the goods by the captain to the consignee, without receiving the freight, could not raise a new charge against Bird, who was not before responsible. Now according to all the cases on the subject, when the owner ships goods on board a vessel, he is liable. He is originally liable in assumpsit either on the special contract, or the quantum meruit, and wherever the question has arisen, it has not been one of original liability, but as to what will dis-

charge from that liability ; and the only difference between assumpsit against the consignor and debt or covenant against the charterer where the bill of lading is made a part of the covenant, is in the form of action ; both bring up precisely the same question.

This distinction between the liability of the shipper and owner of the goods, and the mere agent or consignor of the vendee or owner, is taken by Spencer, C. J. in *Barker* v. *Havens*, 17 *John. R.* 237, and in *Smith on Mercantile Law*, 188, and I apprehend is founded in good sense, and is fully sufficient to reconcile the apparent discrepancy between *Drew* v. *Bird*, and the other cases. But even if this were not sufficient, there is a case decided by the King's Bench in 1833, some five years after *Drew* v. *Bird*, in which that case, and all the others on the subject were referred to or cited in argument, and the construction of the court in *Shepard* v. *De Bernales*, was adopted, and applied in an action like the present, of indebitatus assumpsit against the owner of the goods. *Domett & al.* v. *Beckford*, 5 *Barn. & Ad.* 521, was an action of assumpsit against the defendant as owner, for freight due on goods shipped to him at London, to be delivered to Messrs. P. & W. "*they paying freight.*" The goods were delivered without receiving the freight, and the consignees becoming insolvent, defendant was sued as owner, and held liable by the whole court, upon the doctrine of the other cases examined. The same point was settled in the same way by the Supreme Court of New York as early as 1819, in *Barker* v. *Havens*, 17 *John.* 234, before cited. I think the rule should be discharged.

WHITEHEAD, J. concurred.

Rule discharged.